NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Hon. Dennis M. Cavanaugh |
| Appellee | **OPINION** |
| v. | No. 08-00070 (DMC) |
| GWENDOLYN JACKSON, | |
| Appellant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Appellant Gwendolyn Jackson's appeal from a final judgment of conviction and sentence imposed by United States Magistrate Judge Mautone. Appellant appeals on six grounds: (i) Appellant's conviction was against the weight of the evidence and should thus be vacated and a new trial granted; (ii) Appellant's conduct did not satisfy the elements of the offense of harassment; (iii) the government submitted evidence that violated Appellant's right to remain silent, (iv) the Magistrate Judge's denial of motions for a change of venue and to disqualify the Prosecutor was an abuse of discretion; (v) the Order barring public comment as a condition of her probation violates Appellant's right to freedom of speech; and (vi) Appellant's sentence exceeded the maximum sentence under state law, or was otherwise unreasonable.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Appellant's appeal is **granted** in regards to ground (v) and is **denied** on all other grounds.

**I.    BACKGROUND**

Appellant, a major judge advocate in the New Jersey Army National Guard, appeals from her judgment of conviction imposed by the United States District Court, District of New Jersey. (Mautone, U.S.M.J.). Appellant was convicted upon a non-jury verdict of harassment pursuant to 18 U.S.C. § 13 and NJSA 2C: 33-4(a), for making a series of telephone communications with Mark Winkler ("Winkler") in a manner causing annoyance and alarm. Winkler, a lieutenant colonel judge advocate, was her former superior officer. Appellant was sentenced to a two-year term of probation and a $500 fine. A timely notice of appeal was filed with this Court, on the six grounds listed above.

**II.    STANDARD OF REVIEW**

For an appeal to this Court from a Magistrate Judge, "the scope of review shall be the same as an appeal from a judgment of the District Court to the Third Circuit." L. Cr. R. 58.1(d)(1). This Court will therefore review the Magistrate Judge's findings for clear error. See United States. v. Marmolejo, 89 F.3d 1185, 1197 (5th Cir. 1996). The sentence will be reviewed for reasonableness. See United States v. Cooper, 437 F.3d. 324, 329 (3d Cir. 2006).

**III.    DISCUSSION**

Appellant first appeals on the ground that her conviction was against the weight of the evidence and thus a new trial is warranted. This Court evaluates motions for a new trial under Fed. R. Crim. P. 33 by exercising its own judgment in assessing the government's case. This Court may only order a new trial if it believes that there is a "serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." United States v.

2

Brennan, 326 F.3d. 176, 188 (3d Cir. 2003). Magistrate Judge Mautone acted properly in denying Appellant's Rule 33 motion. The government presented strong evidence of Appellant's guilt. Appellant does not dispute that it was her cellular phone that placed the harassing calls, but questions the reliability of the witnesses due to poor sound quality on the phone, and the fact that witnesses who knew her had not spoken to her for some time. The evidence presented indicates that the speaker phone's sound quality was not so poor that the caller's voice could not be recognized.

     Robert Stevens, a judge advocate on duty with Winkler and one of the government's witnesses, while not recognizing the voice as Appellant's, could nonetheless easily tell that the same caller was calling every time she spoke into the phone, even when she tried to disguise her voice. Mark Tarantino, another judge advocate and government witness, was also sure enough of his identification that the mere passage of time could not negate his familiarity with Appellant's voice. Appellant also raises questions of doubt regarding the location the calls were made from; Appellant asserts that the calls were made from the New York City metropolitan area, but the trial record only indicates that calls were routed through New York metropolitan area servers.

     Appellant claims that James Sattley's (a judge advocate in the same unit as Appellant) written statement spurs reasonable doubt, due to it placing her at Fort Dix at the time of the offense. The statement itself reveals that Appellant was not at Fort Dix for considerable portions of the day. Sattley states that Appellant had driven away from Fort Dix around 8:30 AM, and that he did not see her again until about 1:30 PM when he saw her at a briefing. Sattley did not continuously observe Appellant during this briefing.

Appellant asserts that reasonable doubt comes from her statement that her family members commonly switch SIM cards, cards responsible for storing a cellular phone subscriber's identification data, including the phone number. In theory, this would mean that it may not have been her cell phone that placed the calls. Even if this statement is credible and true, the record has no evidence suggesting that the appellant switched her SIM card with another family member's on the day of the offense. Magistrate Judge Mautone, taking all of this into account, properly weighed the evidence and properly denied Appellant's Rule 33 motion for a new trial.

Second, Appellant claims that the evidence was insufficient to prove beyond a reasonable doubt that her conduct met the standards for the crime of harassment. Appellant argues that because Winkler did not personally pick up every one of her calls, and because Winkler was not alarmed by her conduct, that she effectively failed to harass him. Appellant's claim is subject to the burden that, viewing the evidence in the light most favorable to the government, no rational trier of fact could have found her guilty beyond a reasonable doubt. See United States v. Johnson, 302 F.3d. 139, 149 (3d Cir. 2002). Appellant fails to meet this burden. The N.J.S.A. 2C:33-4(a) harassment definition fits the facts of the case and the evidence presented. Appellant made thirty-one calls to Winkler in roughly 4 ½ hours, involving playing loud music, repeated hangups, and threats. There is no question that the calls were directed at Winkler, and the illegitimate nature and sheer volume of the calls leave no doubt as to the Appellant's purpose. Appellant made her calls in a manner likely to cause annoyance or alarm, with the purpose to harass another, and as such, Appellant's harassment conviction is upheld.

Third, Appellant raises a claim on appeal for the first time that her Fifth Amendment

rights were violated when the prosecutor improperly commented on her silence. Appellant never objected to this testimony before Magistrate Judge Mautone, and absent exceptional circumstances, arguments asserted on appeal for the first time are "deemed waived and consequently are not susceptible" to appellate review. United States v. Lockett, 406 F.3d 207, 212 (3d Cir. 2005). Under these circumstances, Appellant's claim is baseless. Appellant's claim is based on a theory that her statement to the police, voluntarily made and legally obtained, is inadmissable as evidence at trial if she does not testify. No law is cited to support this proposition. The testimony elicited by the prosecutor from Department of Defense Police Investigator Matthew Bloomberg comes straight from the statement made to police, and is admissible. Appellant's appeal on her claim that her right to remain silent was violated is rejected.

Fourth, Appellant claims that Magistrate Judge Mautone should have granted her motions to disqualify the prosecutor and for change of venue. The motion for disqualification is predicated on the belief that the victim used undue influence with the prosecutor to continue the case, rather than allow a plea bargain or dismissal of the charge entirely. There is nothing in the record indicating that there was any undue influence used. Both Winkler and the prosecutor were service members, but they did not belong to the same military organization, or share a relationship of any kind.

The undue influence claim resurfaces in Appellant's change of venue motion. Under a FED. R. CRIM. P. 21(a) motion, the court must be "satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial

trial there." Prejudice refers to a situation that would prevent a fair and impartial trial, and the personal attitude of the prosecution towards a defendant does not have any bearing. See United States v. Shimek, 445 F.Supp. 884, 891 (M.D. Pa. 1978). Appellant has not claimed that there was ever any risk of her not being able to receive a fair and impartial trial, and as such, her claims of abuse of discretion on these grounds are rejected.

Fifth, Appellant claims that the gag order imposed by Magistrate Judge Mautone as a condition of probation is an unwarranted intrusion on her First Amendment rights, and should be vacated. Appellant asserts that conditions of probation should reflect the factors laid out in 18 U.S.C. §3553(a)(2)(A)-(D). A condition may be imposed, Appellant argues, if it is "reasonably related to one or more of the considerations or factors listed ...." U.S. v. Bello, 310 F.3d. 56, 60 (2d Cir. 2002). Further, generally, "conditions on probation do not impermissibly interfere with a defendant's constitutional rights, including those protected by the First Amendment, as long as 'the conditions bear a reasonable relationship to the goals of probation.'" United States v. de Jesus, 116 F.2d. 256, 257 (D.P.R. 2000) (quoting United States v. Turner, 44 F.3d. 900, 903 (10th Cir.), cert. denied, 515 U.S. 1104 (1995)) (citations omitted from 7th, 5th, 6th, and 9th circuits). By these standards, the gag order does not bear a "reasonable relation" to a conceivable goal of appellant's probation. The Government argues that the gag order was designed to create a sense of finality, and "end" conduct by Appellant towards the victim, Winkler. Finality, Appellant counters, is not a goal of probation. The gag order restricting public comment is not related to the conduct constituting the offense. Harassment, as Appellant points out, involves unwelcome communications with an individual, while the gag order involves communications of

a public nature. Accordingly, Appellant's appeal on the gag order is granted, and the gag order is vacated.

Finally, Appellant claims that her sentence exceeded the maximum sentence under state law, and is therefore illegal or otherwise unreasonable. Appellant's claim is predicated on a misreading of N.J.S.A. 2C:45-2. Appellant alleges that her two year probation is illegal because the court is supposed to fix her sentence at a term not to exceed the imposable maximum sentence, or more than five years, whichever is lesser. This proposal, however, cites the sentencing period for a suspended sentence, and not for probation. The same statutory provision provides that individuals sentenced to probation are to be sentenced to a term of no less than one year, and no more than five years. Under this proper construction, the sentence administered by Magistrate Judge Mautone is within the applicable guidelines permitted by New Jersey state law. As such, Appellant's claim is rejected.

**IV.   CONCLUSION**

For the reasons stated, it is the finding of this Court that Appellant's appeal on ground (v) is **granted,** and her gag order is vacated. Appellant's appeal on all other grounds is **denied.**  An appropriate Order accompanies this Opinion.

       S/ Dennis M. Cavanaugh
      Dennis M. Cavanaugh, U.S.D.J.

Date:            June   11  , 2008
Orig.:           Clerk
cc:              All Counsel of Record
                 Hon. Mark Falk, U.S.M.J.
                 File